# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **v.** | § | **CRIMINAL NO. 4:24-CR-39-1** |
| **OSCAR ENRIQUE SERRANO** | § | **JUDGE DAVID HITTNER** |

### <u>PLEA AGREEMENT</u>

The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas, and Jennifer B. Lowery, Assistant United States Attorney, and the defendant, **Oscar Enrique Serrano** ("Defendant"), and Defendant's counsel, pursuant to **Rule 11(c)(1)(A) and (B)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count One of the indictment. Count One charges Defendant with **Conspiracy to Distribute Cocaine Knowing and Intending that it will be Unlawfully Imported into the United States,** involving five (5) kilograms or more of a mixture of a substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 963, 959(a), 960(a)(3) and 960(b)(1)(B). Defendant, by entering this plea, agrees he is waiving any right to have the facts that the law makes essential to the punishment

either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2. The **statutory** maximum penalty for each violation of Title 21, United States Code, Sections 963, 959(a), 960(a)(3) and 960(b)(1)(B) is imprisonment of not less than **10 years** or more than **LIFE** and a fine of not more than $10,000,000. Additionally, Defendant may receive a term of supervised release after imprisonment of **at least 5 years**. *See* Title 18, United States Code, sections 3559(a)(1) and 3583(b)(1). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for **up to 5 years** without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(1) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States

District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the

United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing and fully cooperate with the United States. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to drugs, illegal firearms and immigration. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)    Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)    Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his/her Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)    Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)    Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)    Defendant agrees to provide to the United States all documents in his/her possession or under his/her control relating to all areas of inquiry and investigation; and

(f)    Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he/she remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his/her plea.

### Waiver of Appeal, Collateral Review, and Statute of Limitations

7. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal

following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive.

Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

10. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

## The United States' Agreements

11. The United States agrees to each of the following:

(a) If Defendant pleads guilty to Count One of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. The defendant agrees that with respect to any and all dismissed charges he is not a 'prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law;

(b) If the Court determines the Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently; and

(c) The United States and the Defendant agree to recommend to the Court the Defendant is responsible for 402 kilograms of cocaine, a dug amount in Level 36 in the drug quantity table under U.S.S.G. § 2D1.1(c) (2).

## Agreement Binding - Southern District of Texas Only

12. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the indictment/information. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

8

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14. Defendant is aware the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

15. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses, and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

16. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

a. From on or about December 7, 2022, through July 10, 2023, using a confidential source (CS) the Drug Enforcement Administration identified Oscar

Serrano as a cocaine distributor in Houston, Texas; SEALED DEFENDANT 2 as a cocaine source of supply in the Dominican Republic; Beatriz Sandoval-Rojas as a cocaine broker in Houston, Texas; SEALED DEFENDANT 4 as a cocaine source of supply in Cali, Colombia; and Jonathan Porras-Lopez as a cocaine source of supply in Houston, Texas.

      b. On or about January 20, 2023, the CS met with Oscar Serrano and SEALED DEFENDANT 2 in Santo Domingo, Dominican Republic. An undercover officer was also present with the CS during the meeting, from the Dominican Republic national police. During the meeting, SEALED DEFENDANT 2 agreed to supply 100 kilograms of cocaine to the CS and the undercover officer for $4,400 per kilogram, for a total of $440,000. On March 9, 2023, the Dutch Navy and other law enforcement personnel seized approximately 606 kilos of cocaine from a go-fast vessel approximately 45 nautical miles north of La Guajira, Colombia. Contained within this load of cocaine was the 100 kilos of cocaine ordered by the CS. Also found in possession of the crew members was a paper containing GPS coordinates in the Dominican Republic and the cellular phone number of SEALED DEFENDANT 2. The DEA lab confirmed 9 of the 605 units contained cocaine and weighed approximately 606 kilograms.

      c. On or about March 18, 2023, the CS spoke with SEALED DEFENDANT 2 over WhatsApp messenger, confirming he was still using the same cellular

telephone number found on the go-fast vessel with 606 kilograms of cocaine. The CS also met with Oscar Serrano in Houston, Texas on that same day. During the meeting, Oscar Serrano informed the CS that SEALED DEFENDANT 2 had a drug shipment seized in international waters. Oscar Serrano further corroborated the incident during the meeting when he called SEALED DEFENDANT 2's partner, an unidentified male, who confirmed they had recently lost a cocaine shipment to law enforcement.

d. After the seizure, Oscar Serrano introduced the CS to a different source of supply. On May 12, 2023, the CS met with Oscar Serrano in Houston, Texas where he introduced the CS to Beatriz Sandoval-Rojas. From May 2023, through June 2023, the CS met with Beatriz Sandoval-Rojas and Oscar Serrano on multiple occasions in Houston, Texas to finalize the details of a 300-kilogram cocaine transaction for $2,450 per kilogram, or a total of $735,000, to be purchased in Colombia and transported to Houston, Texas. The CS agreed to travel to Colombia to meet with Beatriz Sandoval-Rojas' contacts and requested to first purchase two kilograms of cocaine, as a representative sample, to ensure the quality of the cocaine was sufficient before committing to the larger 300-kilogram purchase.

e. On or about June 21, 2023, the CS met with Beatriz Sandoval-Rojas' contact, SEALED DEFENDANT 4, in Cartagena, Colombia. An undercover officer was also present with the Confidential Source during the meeting, from the

Colombian National Police. During the meeting, SEALED DEFENDANT 4 agreed to supply 300 kilograms of cocaine to the Confidential Source and undercover officer, to be destined for Houston, Texas. The CS and the undercover officer purchased two kilograms of cocaine from SEALED DEFENDANT 4, as a representative sample of the 300 kilograms of cocaine, for $16,000,000 Colombian pesos, or approximately $4,000 in United States Dollars. The two kilograms of cocaine were sent to the Houston Forensic Science Center in Houston, Texas where forensic chemists confirmed one of the two bundles contained cocaine with a weight of 1,001.57 grams.

f. On or about June 26, 2023, the CS met with Beatriz Sandoval-Rojas in Houston, Texas. During the meeting, the CS provided Beatriz Sandoval-Rojas with $1,000, payment she had requested for arranging the two-kilogram cocaine transaction in Cartagena, Colombia with SEALED DEFENDANT 4. Beatriz Sandoval-Rojas informed the CS that their boss, Jonathan Porras-Lopez, wanted to meet with the CS.

g. On or about July 7, 2023, the CS met with Beatriz Sandoval-Rojas and Jonathan Porras-Lopez in Houston, Texas. During the meeting, the CS, Jonathan Lopez-Porras, and Beatriz Sandoval-Rojas discussed the cocaine the CS intended to purchase. Jonathan Lopez-Porras spoke about the CS meeting with SEALED DEFENDANT 4 and that SEALED DEFENDANT 4 being one of his workers who

moved stuff (referring to cocaine) for him over there. Jonathan Lopez-Porras

explained that they only produced "merchandise" (referring to cocaine) on demand

because storing too much for too long the cocaine would get damp and goes bad.

The CS and Jonathan Lopez-Porras discussed the quality of the samples that were

purchased on June 21, 2023, in Colombia. Jonathan Lopez-Porras told the CS that

the three he has over there (referring to the 300 kilos of cocaine) the CS could

sample again, and it would be the same price as discussed in the June 21, 2023

meeting with SEALED DEFENDANT 4. Jonathan Lopez-Porras told the CS the

next time he met with SEALED DEFENDANT 4 in Colombia to rent an Airbnb so

that the meeting was not out in the open. The CS and Jonathan Lopez-Porras

discussed how much cocaine would be ordered and agreed to an order of 500

kilograms. The CS, Jonathan Lopez-Porras, and Beatriz Sandoval-Rojas discussed

the price per kilo for the order of cocaine. Beatriz Sandoval-Rojas told the CS that

Jonathan had to talk to the people in the kitchen to before he could give the CS a

final agreed price, they agreed to give the CS the price the next day. Beatriz

Sandoval-Rojas said the three in Cali (referring to the 300 kilos of cocaine) were

waiting for you (referring to the CS) and both Beatriz Sandoval-Rojas and

Jonathan Lopez-Porras assured the CS the quality would be the same as the two

kilos previously purchased. Jonathan Lopez-Porras and the CS discussed how he

would work on lowering the prices for the cocaine shipment.

h. At trial the Government would offer testimony from the CS who conducted the transactions with the defendants, the agents who conducted surveillance, the text messages exchanged between the CS and the defendants, and the recordings of the conversations with the defendants and the CS. The Government would also present the testimony of the chemists who tested the drugs and concluded that they contained a mixture and substance that contained cocaine. Finally, the Government would present testimony from agents that the amount of drugs seized in this case is consistent with distribution and not personal use.

## Breach of Plea Agreement

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Monetary Penalties, Assets and Financial Disclosures**

18. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

**Restitution**

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $0.00. Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. §1B1.3, including conduct pertaining to any dismissed

counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

### Forfeiture

21. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation [including but not limited to the following specific assets:];

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least $0.00 from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount [or, if not agreed, that the Court will determine the proper amount of a money judgment];

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

**Financial Statement**

22. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

23. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

24. This written plea agreement, consisting of 22 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other

than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

DELIBERATELY LEFT BLANK

25. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at _____, Texas, on _____, 2025.

Oscar Enrique Serrano

Defendant

Subscribed and sworn to before me on _____, 2025.

NATHAN OCHSNER, Clerk

UNITED STATES DISTRICT CLERK

By: _____

Deputy United States District Clerk

APPROVED:

NICHOLAS J. GANJEI

UNITED STATES ATTORNEY

By: _____

Jennifer B. Lowery

Assistant United States Attorney

Southern District of Texas

Carlos A. Rodriguez

Attorney for Defendant

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| v. | § | CRIMINAL NO. 4:24-CR-39-1 |
| OSCAR ENRIQUE SERRANO | § | JUDGE DAVID HITTNER |

### PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     7 – 17 – 2025
Carlos A. Rodriguez                         Date
Attorney for Defendant

I have consulted with my attorney and fully understand all my rights with respect to the indictment/information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____          7 - 17 - 2025
Oscar Enrique Serrano                      Date
Defendant